UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COSMETIC DERMATOLOGY AND
VEIN CENTERS OF DOWNRIVER,
P.C.,

Case No. 98-73059

Hon. Nancy G. Edmunds

     Plaintiff(s),

v.

NEW FACES SKIN CARE CENTERS,
LTD., SKIN CARE SPECIALISTS, P.C.,
AND NEW ENGLAND BUSINESS
SERVICES, INC.,

     Defendant(s).

_____/

## OPINION & ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on three motions for summary judgment. In this trademark infringement action, brought under the Lanham Act, Plaintiff Cosmetic Dermatology and Vein Centers of Downriver, P.C. ("Cosmetic Dermatology") contends that the Defendants have violated the trademark rights in its business logo. Plaintiff uses the logo on letterhead and in advertisements to promote its dermatology and plastic surgery services. Defendants New Faces Skin Care Centers ("New Faces") and Skin Care Specialists, P.C., ("Skin Care") move jointly for summary judgment, arguing that the marks are not "substantially similar" and that in any event, the agreed upon facts do not meet the Sixth Circuit's "likelihood of confusion" test for infringement. Plaintiff, in turn, moves for summary judgment, arguing just the opposite. Defendant New England Business Services, ("New England") moves separately for summary judgment, arguing that the Court lacks subject matter jurisdiction as to them and, alternatively,



that there is no infringement as a matter of law. As discussed below, the marks are not substantially similar. Under the eight factor test which applies to the determination of whether trademark infringement has occurred, there is no a likelihood of confusion. The Court GRANTS the Defendants' motions for summary judgment; and DENIES the Plaintiff's motion.

## I. Facts

The facts in this case are not in dispute. Plaintiff, Cosmetic Dermatology and Vein Centers of Downriver, P.C. ("Cosmetic Dermatology"), operates a medical services center in the Downriver Detroit area. Cosmetic Dermatology offers medical services for the skin, including, inter alia, facial peels, dermabrasion and rejuvenation, as well as other dermatological services to alleviate such skin conditions as acne, sun-damaged skin,  skin cancers, and psoriasis. Doctor Scott Friedman performs the medical services at Cosmetic Dermatology. To promote his business, Plaintiff employs the following mark, which he registered with the Federal Trademark Office on September 9, 1997:





**COSMETIC
DERMATOLOGY
& VEIN CENTER**
17171 Fort Street
Riverview, MI 48192
313.282.7266

Scott Friedman D.O.

<u>**As registered**</u>      <u>**As used in commerce**</u>

Defendant New Faces Skin Care Centers ("New Faces") provides marketing, bookkeeping, accounting, and general business expertise to the Detroit medical community. New Faces markets and promotes cosmetic dermatology services on behalf of several clientele. One of its clients is Defendant Skin Care Specialists, P.C., ("Skin Care"). Skin Care is owned

and operated by Dr. John R. Fow. Skin Care offers dermatology and plastic surgery services, similar to the skin treatments offered by Cosmetic Dermatology. New Faces markets services for Skin Care as though it is New Faces that actually performs the services. Thus, as will be seen, Skin Care's logo bears the name "New Faces Skin Care Centers, Ltd."

Defendant New England Business Services ("New England"), is in the business of selling office supplies, such as stationery, filing materials, labels, and similar types of goods to doctors and other medical professionals. Stationery purchased from New England can be printed with a logo chosen by the purchaser from a selection of standard designs sold by New England. New England is the successor corporation to Sycom Limited Partnership ("Sycom") which created the advertising logo at some point between 1984 and 1985. The standard logo, which has been sold over 420 times worldwide, is reproduced below:

 

New England created a business logo for Skin Care in 1996, using one of its standard logos. Skin Care's business logo looks like this:



3

Skin Care began using its logo in March 1996. Plaintiff began using its logo in August of 1995; however, Plaintiff did not register its logo until September 1997, one and one-half years after Skin Care began using its design.

Cosmetic Dermatology filed this action, alleging in Count I that Defendants' use of its logo constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; § 1125, alleging in Count II a violation of common law unfair competition, and alleging in Count III a violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 450.901, et. seq.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." Celotex, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could

4

reasonably find for the non-movant; a "scintilla of evidence" is insufficient. Liberty Lobby, 477 U.S. at 252.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. Liberty Lobby, 477 U.S. at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." Liberty Lobby, 477 U.S. at 255.

## III. Analysis

### A. Subject Matter Jurisdiction Re: New England

As an initial matter, Defendant New England argues that this Court lacks subject matter jurisdiction under the Lanham Act with respect to Plaintiff's claim against them. Infringement claims under the Lanham Act arise under two sections, 15 U.S.C. § 1114 and § 1125. Section 1114 provides for a cause of action for the unauthorized use of any counterfeit or "colorable imitation" of a registered mark. That section reads:

> (1) Any person who shall, without the consent of the registrant - (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a) (emphasis added).

Section 1125(a) provides for a cause of action against the use of any "word, term, name, symbol, or device" which is false, misleading and is likely to cause confusion with the goods or services offered by another. Thus in order to establish a violation of the Act, a plaintiff must show use of a mark in connection with goods or services that is likely to cause consumer confusion. The likelihood of confusion is the lynchpin of infringement. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1116 (6th Cir. 1996).

5

New England argues that here there can be no infringement where there is no confusion with respect to the services offered by New England and those services offered by Plaintiff. New England contends that "the subject logo does not serve and has not served any identifying function for [New England], and it cannot, as it has never been used by [New England] with any particular goods or services. . . . Absent use in a source-identifying way, there can be no confusion as to an affiliation with Plaintiff." Def. New England's Br. in support of summary judgment at 8.

While it may be the case that New England has not violated the Lanham Act because of its posture in relation to that of the Plaintiff, that does not deprive this Court of subject matter jurisdiction. Automatic Washer Co. v. Easy Washing Mach. Corp., 98 F.Supp. 445 (N.D.N.Y. 1951)(complaint alleging infringement of trademark registration under this chapter, unless plainly unsubstantial, is sufficient to confer jurisdiction upon federal district court to determine issue of infringement). Even in the cases cited by New England, the courts applied the likelihood of confusion test to the defendant's conduct in issue. While the courts ultimately concluded that there was no infringement, the courts did not hold that they lacked jurisdiction under the Act. See International Association of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center, 103 F.3d 196 (1st Cir. 1996); Reddy Communications, Inc. v. Environmental Action Foundation, 477 F.Supp. 936 (D.C.D.C. 1979). Prior to applying the eight factor test which applies to the determination of whether the alleged infringing mark is likely to cause a "likelihood of confusion" among consumers, the court of appeals in International Association stated:

> [W]e turn now to the octet of factors . . . . While the strange configuration of this case renders certain of those factors irrelevant or, at least, difficult to apply -- square pegs never fit snugly in round holes -- we make the effort in the interest of completeness.

6

International Association, 103 F.3d at 203.

Likewise here, the posture of New England as the initial supplier of the logo may make certain factors in the test difficult to apply, or may render them entirely inapplicable. This, however, goes to the question of New England's infringement, not to the question of this Court's jurisdiction over the claim in the first instance.

## B. Lanham Act Violation (Count I)

The Sixth Circuit applies an eight factor test in order to determine whether defendants have infringed a trademark under the Lanham Act. Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595 (6th Cir. 1991); Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642 (6th Cir.) cert. denied, 459 U.S. 916 (1982). The Court must look to the following factors, which comprise what is known as the "likelihood of confusion test":

        (1) the strength of the plaintiff's mark;
        (2) the relatedness of the goods;
        (3) the similarity of the marks;
        (4) evidence of actual confusion;
        (5) marketing channels used;
        (6) the likely degree of purchaser care;
        (7) the defendants' intent in selecting the mark; and
        (8) likelihood of expansion of the product lines.

Wynn Oil Co., 943 F.2d at 599-600; Frisch's Restaurants, 670 F.2d at 648.

The Court must balance the above factors in order to determine "whether a likelihood of confusion exists among consumers" with respect to the goods or services at issue. Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 833 (6th Cir. 1983). The Sixth Circuit has instructed that the "general concept underlying the likelihood of confusion [test] is that the public believe that 'the mark's owner sponsored or otherwise approved the use of the trademark.'" Carson, 698 F.2d at 834 (quoting Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 79 (2d Cir. 1981)). The application of these factors presents a question of law for the Court to decide.

7

WSM, Inc. v. Tennessee Sales Co., 709 F.2d 1084, 1086 (6th Cir. 1983); Frisch's Restaurants, 670 F.2d at 647.[1]

As discussed below, factors 2, 5, and 8 favor Plaintiff. That is, the services and the marketing channels used are similar, and there is evidence of expansion of the product lines. Three of the most important factors, 1, 3, and 4, favor the Defendants. That is, the Plaintiff's mark is not strong; the marks are not substantially similar; and there is little evidence of actual confusion. The remaining factors, with respect to the likely degree of purchaser care and the Defendants' intent in selecting the mark, because they do not favor the Plaintiff, must be deemed neutral. On the whole, Defendants cannot be said to have infringed Plaintiff's trademark under the Lanham Act.

### (1) Strength of the Plaintiff's Mark

The protection afforded a trademark depends on the strength or weakness of a mark. The stronger the mark, the greater the protection. Ameritech, Inc. v. American Information Technologies Corp., 811 F.2d 960, 967 (6th Cir. 1987). The strength of the mark analysis focuses on the "distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous source." W.W.W. Pharmaceutical Co. v. Gillett Co., 984 F.2d 567, 572 (2d Cir. 1993)(check quote).

The record contains no evidence which tends to show that Plaintiff's mark is strong. Plaintiff began using the mark in March of 1995. It was not registered until September of 1997. While a mark that has been registered for five years has been considered strong and worthy of

---

[1] The same standard applies whether plaintiff's complaint is based on trademark infringement, section 1114, or unfair competition, section 1125(a). Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 604 (6th Cir. 1991).

8

protection, Wynn Oil I, 839 F.2d at 1187, this mark has been registered for only two years and four months.

Furthermore, there is no evidence that the mark has a tendency to identify goods sold from a particular source. The Sixth Circuit has noted that "[a] mark is strong if it is highly distinctive, i.e. if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir. 1991)(quoting Frisch's Restaurant, Inc. v. Shoney's Inc., 759 F.2d 1261, 1264 (6th Cir. 1985). There is no evidence that the public associates Plaintiff's mark with Plaintiff's dermatology services. Nor is there any indication that the mark is highly distinctive, or that it has been the subject of wide and intensive advertisement. The Plaintiff uses the mark on its letterhead and in one yellow pages advertisement in the Metro Detroit area.

The mark is also not particularly unique. In Homeowners Group, the Sixth Circuit held that in determining the strength of the plaintiff's mark, the district court should have considered a research report, submitted by the defendant which "indicated numerous third-party registrations of the mark HMS, either alone or in conjunction with other words or designs, in the U.S. Patent and Trademark Office and in various states." Homeowners Group, 931 F.2d at 1108. The court of appeals noted that the mere existence of the marks at the Patent and Trademark Office "will not materially affect the distinctiveness of another's mark which is actively used in commerce." Id. However, the court stressed that the actual events in the marketplace must be assessed:

> In order to be accorded weight a defendant must show what actually happens in the marketplace. While more detailed information regarding the nature and extent of use by third-party users of HMS marks may be more persuasive than the information provided, the evidence offered by [the defendant] was certainly

9

probative of the fact that marks consisting of or containing the initials HMS are used in the marketplace by others.

Id., see also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 281 (6th Cir. 1997)(indicating that third-party registrations should specifically relate to the sale of the product in question).

There is evidence in this record that there are 93 subsisting registrations and pending applications in the Patent and Trademark Office consisting of paired, silhouette-type profiles, similar to Plaintiff's mark. Decl. of Arthur H. Seidel, Esq. at ¶ 8, attached as Exb. 6 to Defendant New England's Motion for Summary Judgment; see also Exb. A attached thereto.   A majority of the marks in Exhibit A are used as logos to promote medical services, including dermatology, surgery, psychological services, and other services related to health care.  The existence of these registrations and pending applications and their use or proposed use to promote medical services in the marketplace, is probative of the fact that paired, silhouette-type profiles are commonly used in commerce to promote such services.  This also tends to show that Plaintiff's logo is weak.  McKee Baking Co. v. Interstate Brands Corp., 738 F.Supp. 1272 (E.D. Mo. 1990)(evidence of third-party usage of similar marks on similar goods is admissible and relevant to show that trademark is relatively weak and entitled to a narrower scope of protection).

Defendants New Faces and Skin Care also offer examples of paired silhouettes used to advertise other dermatological services in the Metro Detroit area.  See Defs' Exbs 7-10, attached to their motion for summary judgment.  The use of these logos which have a similar theme as Plaintiff's logo tends to show that consumers in the area would not necessarily equate paired silhouettes with Plaintiff's particular business as opposed to some other business offering

such services.[2]  This tends to show that Plaintiff's design is relatively generic. There is no evidence in the record which indicates that the acronym "CDV" or its logo should be considered "strong or highly distinctive by reason of advertisement, volume of sales or market place acceptance and public recognition." Colgate-Palmolive Co. v. Carter-Wallace, Inc., 4432 F2d 1400, 1402 (C.C.P.A. 1970). This factor favors the Defendants.

## (2) Relatedness of the Goods

The Court must next consider the relatedness of the goods or services in question. With respect to this factor, the Sixth Circuit has instructed, "the court must bear in mind 'that it is trying to determine whether consumers will be confused as to the origin [or sponsorship] of the product.'" Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 600 (6th Cir.1991)(quoting Wynn Oil I, 839 F.2d at 1187). The use of similar designations is more likely to create confusion where the services or goods "fall within the same general class, or are used together." Lang v. Retirement Living Pub. Co., 949 F.2d 576, 582 (2d Cir. 1991).

### (a) New Faces and Skin Care

Plaintiff is in the business of offering dermatological and other skin treatment services to the public. Defendant Skin Care clearly offers similar services. Defendant New Faces advertises that it offers the same services, although the services are actually performed by Skin Care. Thus, although New Faces is actually in the business of providing marketing services to the medical community, it holds itself out as though it is New Faces that performs the actual

---

[2] This evidence is not offered for its truth, but rather offered to show that the prevalence of silhouette-type faces in the marketplace diminishes the strength of Plaintiff's mark. See, e.g., Schering Corp. v. Pfizer, Inc., 189 F.3d 218, 227-28 (2d Cir. 1999)(survey evidence not inadmissable as hearsay).

11

medical service. As it relates to these two Defendants the relatedness of the services is high. This favors the Plaintiff.

However, the import of this high correlation is dependant upon the extent to which the marks are similar. As will be discussed below, the marks are not similar and thus the fact that New Faces/Skin Care and Cosmetic Dermatology may compete for the same customers is less important because there is not likely to be consumer confusion about which company offers to provide or which will actually perform the medical service. In Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 283 (6th Cir. 1997) the Sixth Circuit instructed that in determining the relatedness of the goods, "courts must examine whether the products of the parties perform the same function, concentrating on whether consumers will be confused as to the origin of the product." Id.

### (b) New England

With respect to New England the services are not the same. New England is not in the business of offering medical skin treatments or dermatological services, nor does it hold itself out as though it provides these services. New England offers office supplies to the medical community and creates custom stationery upon request. No consumer would go to New England for the services which Plaintiff offers, and vice versa. The relatedness of the services cannot be said to be high as between Plaintiff and New England.

### (3) Similarity of the Marks

In order to evaluate the similarity of the marks, "a court must determine, in light of what occurs in the marketplace, whether the mark 'will be confusing to the public when singly presented.'" Wynn Oil Co., 943 F.2d at 601, (quoting Wynn Oil I, 839 F.2d at 1189). "Side-by-side comparison is not the test." Wynn Oil I, 839 F.2d at 1189. This factor is entitled to

12

considerable weight. Daddy's Junky Music, 109 F.3d at 283. In Daddy's Junky Music, the Sixth
Circuit stated,

> courts must determine whether a given mark would confuse the public when
> viewed alone, in order to account for the possibility that sufficiently similar marks
> "may confuse consumers who do not have both marks before them but who may
> have a 'general, vague, or even hazy, impression or recollection' of the other
> party's mark."

Id. (quoting Wynn Oil I, 839 F.2d at 1188, quoting James Burrough Ltd. v. Sign of the Beefeater,
Inc., 540 F.2d 266, 275 (7th Cir. 1976)). The marks should be "viewed in their entirety" and the
court should "focus on their overall impressions, not individual features." Daddy's Junky Music,
109 F.3d at 283 (citing Homeowners Group, 931 F.2d at 1109); see also Estate of P.D.
Beckwith, Inc. v. Commissioner of Patents, 252 U.S. 538, 545-46 (1920)("[t]he commercial
impression of a trademark is derived from it as a whole, not from its elements separated and
considered in detail. For this reason it should be considered in its entirety." Id.).

The court must analyze the overall similarity of the marks, including pronunciation,
appearance and verbal translation. While slight differences do not render the marks dissimilar,
the court can consider individual differences between the original mark and the alleged infringing
mark. The principle involved in ascertaining confusion between marks "is that marks must be
compared in connection with the particular goods or services for which they are used." In re
National Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985). As the court stated in In re National
Data Corp.:

> It follows from that principle that likelihood of confusion cannot be predicated on
> dissection of a mark, that is, on only part of a mark. On the other hand, in
> articulating reasons for reaching a conclusion on the issue of confusion, there
> is nothing improper in stating that, for rational reasons, more or less weight has
> been given to a particular feature of a mark, provided the ultimate conclusion
> rests on consideration of the marks in their entireties. Indeed, this type of
> analysis appears to be unavoidable.

13

Id. at 1058.

Competing marks consisting of "both words and pictorial symbols must be compared in their *entireties* to determine likelihood of confusion." McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:47 (1996)(emphasis in original). However, "when comparing composite marks involving both designs and words, with the designs similar and the words different, the matter of which of the two features dominates the marks is usually controlling in determining likelihood of confusion." Id., citing Arnold, Schwinn & Co. v. Evans Products Co., 302 F.2d 765 (C.C.P.A. 1962).

It should be noted that "similarity is determined on the basis of the designation's total effect, and infringement 'does not exist, though the marks be identical and the goods very similar, when the evidence indicates no [likelihood of confusion]." International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 203-04 (1st Cir. 1996)(quoting James Burrough Ltd. v. Sign of the Beefeater, Inc., 540 F.2d 266, 274 (7th Cir. 1976)).

The parties here dispute which portion of the mark is the dominant feature. Plaintiff contends it is the picture depicting, "two human silhouettes, one dark and one light, situated on atop the other, with the dark silhouette in the foreground, set against a dark background." Defendants contend that the dominant feature of the mark is the term "CDV." The predecessor of the Court of Appeals for the Federal Circuit has stated: "[I]n a composite mark comprising a design and words, the verbal portion of the mark is the one most likely to indicate the origin of the goods to which it is affixed." CBS, Inc. v. Morrow, 708 F.2d 1579, 1581-82 (C.C.P.A. 1983); see also Aero-Motive Co. v. D.S. Aeromotive, Inc., 922 F.Supp. 29, 41 (W.D. Mich. 1996)("Where one feature such as a word in a mark has a greater impact on the potential

14

buyer, it is given greater weight.") Which portion of the instant mark has a greater impact on a potential consumer of dermatological services may constitute a question of fact. However, the Court finds that regardless of which feature is dominant, the marks are not substantially similar.

As it appears in the marketplace, Plaintiff's mark is accompanied by the full name and address of the business, "Cosmetic Dermatology & Vein Center." Defendants' logo contains the words "New Faces Skin Care Centers™, Ltd." Except for the word "Center" which is common to both names, there is nothing similar or confusing about the names of the businesses. Further, the only common word, "center," is not descriptive of or confusing with respect to the services offered. Colgate-Palmolive Co. v. Carter-Wallace, Inc.,432 F.2d 1400 (C.C.P.A. 1970)("Peak Period" does not infringe "Peak" where the difference in appearance and sound of the marks in issue is . . . obvious. . . . In their entireties they neither look nor sound alike." Id. at 737.).

The Plaintiff's logo is square in form, with the name and address of the business designed in a block next to the logo. Defendants' logo is not square, but rather has a linear appearance, with the full name of the business beginning within the black face on the logo and continuing outward to the right in a straight line; the text is underlined. The typeface of the two logos is different.

Even viewing the logos alone, without considering the full names of the businesses, one must conclude that the logos are not substantially similar. The Plaintiff's logo is set inside of a square, while the Defendants' is not set within a shape, but rather constitutes a circle. The Plaintiff's logo has the acronym "CDV" predominately displayed, all in capital black letters, in the bottom one-third of the square, beneath the two silhouetted faces. Defendants' logo, on the other hand, has the word "New" displayed much less predominately, in capital and lower case

letters, within the black silhouette face. The letters are not black, but white. There is nothing confusingly similar about the letters "CDV" and the word "New." These two appellations do not have a single letter in common.

Finally, the two paired silhouette faces, although facing in the same direction in both logos, are quite different. In Plaintiff's logo, the distance between the two faces is much narrower than it is in the Defendants' logo. Finally, the curvature of the faces is different, with the Defendants' faces being more detailed, and having less of a slope than Plaintiff's. In sum, the two logos are not substantially similar.[3]

### (4) Evidence of Actual Confusion

Evidence of actual confusion "is undoubtedly the best evidence of likelihood of confusion." Daddy's Junky Music, 109 F.3d at 284 (quoting Wynn Oil I, 839 F.2d at 1188). Few or isolated instances of actual confusion may suggest that there is no confusion at all. Daddy's Junky Music, 109 F.3d at 284, Homeowners Group, 931 F.2d at 1110; Champions Golf Club, 78 F.3d at 1120.

The only evidence of confusion in this case comes, not from a consumer of dermatological services, but rather from a California pharmaceutical representative, Calvin Loshinskie. He indicated to Plaintiff that he was confused as to the relatedness of the parties'

---

[3] Even if the Court assumes that the marks are substantially similar in that, as Plaintiff contends, each depict "two human silhouettes, one dark and one light, situated one atop the other, with the dark silhouette in the foreground, set against a dark background," as discussed infra, a finding for Plaintiff with respect to the substantial similarity prong does not mean that the Defendants have acted in violation of the Lanham Act where, considering the other factors, there is no likelihood of consumer confusion. See, e.g., International Ass'n, 103 F.3d at 203-04: "infringement does not exist, though the marks be identical and the goods very similar, when the evidence indicates no [likelihood of confusion]." And, "in certain circumstances otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer." Id. at 204.

16

services after witnessing a commercial for Defendant's services.    The parties are in

disagreement over whether this evidence of confusion is relevant.  Defendants contend it is not

relevant because it is only evidence of consumer confusion that counts, not a supplier's

confusion.

The Sixth Circuit has held that evidence of actual confusion from a non-consumer is

relevant.  In S.p.A. Esercizio v. Roberts, 944 F.2d 1235 (6th Cir. 1991), the court of appeals

explained that there is no requirement that in order to be relevant evidence of actual confusion

"must be confusion at the point of sale -- purchaser confusion -- and not the confusion of

nonpurchasing, casual observers."  Id. at 1243.  The court explained why:

> The Lanham Act . . . was intended to do more than protect consumers at the
> point of sale.  When the Lanham Act was enacted in 1946, its protection was
> limited to the use of marks 'likely to cause confusion or mistake or to deceive
> purchasers as to the source of origin of such goods or services.'  In 1967,
> Congress deleted this language and broadened the Act's protection to include
> the use of marks 'likely to cause confusion or mistake or to deceive.'  Thus,
> Congress intended to 'regulate commerce within [its control] by making
> actionable the deceptive and misleading use of marks in such commerce; [and]
> . . . to protect persons engaged in such commerce against unfair competition.
> . . . "  15 U.S.C. § 1127.

Id. at 1244.  Accord Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111,

1119 (6th Cir. 1996).

Thus, in this Circuit it is clear that evidence of confusion by a non-consumer is relevant.

In Champions Golf Club, the court of appeals reversed the district court's holding that the

trademark was not infringed.  With respect to this particular factor, the court of appeals held that

the district court incorrectly disregarded evidence of actual confusion because it did not emanate

from consumers.  Id. at 1119.  Providing instruction for analyzing the factor on remand, the Sixth

Circuit stated:

17

[T]he district court should . . . bear[] in mind that it is not determinative of the matter that the four incidents of actual confusion did not relate to direct consumers of [plaintiff's] services. It is significant that in all four instances, the confused individuals were knowledgeable about golf clubs, and had an incentive to accurately identify the club in question, but nonetheless were unclear about which club was which. On the other hand, four incidents is not a considerable quantum of evidence of actual confusion, and minimal or isolated instances of actual confusion are, obviously, less probative than a showing of substantial actual confusion."

Id.

In this case, the evidence of confusion by Loshinskie, one of Plaintiff's suppliers' pharmaceutical representatives, is relevant. Further, it seems important that the confused individual worked in the dermatological field as a supplier and had an incentive to accurately differentiate between Cosmetic Dermatology and New Faces/Skin Care. Although this evidence is clearly relevant to the determination, it is by no means determinative of the likelihood of confusion test. One single episode of confusion on the part of a California pharmaceutical representative does not lead to the conclusion that there is a likelihood of confusion as to the two marks generally.

One incidence of confusion does not tip this factor in Plaintiff's favor. As the Court in Homeowners Group indicated: "where the parties have been doing business in the same area for some time and where they have advertised extensively, isolated instances of actual confusion are not conclusive or entitled to great weight in the determination." Homeowners Group, 931 F.2d at 1110 (citing Sun Banks, Inc. v. Sun Fed. Savs. & Loan, 651 F.2d 311, 319 (5th Cir. 1981)(nineteen reports over three years held insufficient); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir.) cert. denied, 449 U.S. 899 (1980)(three instances over fifteen years held insufficient); Armstong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 506 and n. 15 (5th Cir.), cert. denied, 444 U.S. 932 (1979)(threes instances of confusion insufficient)).

18

In this case the parties have been advertising with their respective logos since at least 1996. One isolated incident of actual confusion by a pharmaceutical representative supports the inference that there is no likelihood of confusion. As the Homeowners Court indicated, "the existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists." Id. at 1110. This factor favors the Defendants.

### (5) Marketing Channels Used

The next factor which must be considered is the marketing channels in which the parties use their respective logos. The Court "must consider the similarities or differences between the predominant customers of the parties' respective goods or services." Daddy's Junky Music, 109 F.3d at 285. Further, the Court "must determine whether the marketing approaches employed by each party resemble each other." Id.

### (a) New Faces and Skin Care

As discussed previously with respect to the relatedness of the goods, the predominant customers of Plaintiff and New Faces and Skin Care are similar. These parties' marketing approaches are also similar. Plaintiff advertises its services in Wayne and Oakland counties, using its logo on letterhead, stationary, business cards, in newspaper advertisements, and yellow page advertisements.

Similarly, Defendants New Faces and Skin Care admitted that they have used the logo "in newspaper advertisements, business cards, letterhead and stationery, TV commercials, signs, and labels on bottles." Def's Amended Supplemental Answers to Pl.'s Interrogatories and Request to Produce at 10, attached to Pl.'s Motion for Summary Judgment at Exb. E, ¶ 12. Although they did not specifically state that they marketed their services in Wayne and Oakland

Counties, Stuart Gorelick, Chief Executive Operating Officer of New Faces and Vice President of Skin Care,[4] testified in his deposition that the Defendants' "areas of dominant influence" are Wayne, Oakland, Macomb, and Washtenaw counties. Gorelick Dep at 35. Further he indicated that New Faces and Skin Care advertise in The Detroit News, The Detroit Free Press and The Metro Times, all of which are circulated in the greater Metro Detroit area. Gorelick also testified that Skin Care and New Faces do not currently advertise in the yellow pages. Gorelick Dep. at 47. On the whole, Plaintiff and New Faces and Skin Care use similar marketing channels, for similar services. This factor favors Plaintiff.

Again, the fact that the marketing channels are the same does not necessarily indicate that there is a likelihood of confusion. Daddy's Junky Music, 109 F.3d at 285 (instructing that on remand, even if the court again finds that the marketing channels are almost completely different, "it should reconsider whether these facts greatly lessen any likelihood of confusion." Id.) The fact that the marketing channels at issue here are similar as between Plaintiff and these two Defendants does not support the conclusion that there is a likelihood of confusion. As discussed above, the marks are not substantially similar, nor is Plaintiff's mark strong.

#### (b) New England

This factor is irrelevant as to New England, because the goods are not related and New England is not marketing any products or services containing the logo.

### (6) Likely Degree of Purchaser Care

#### (a) New Faces and Skin Care

The less care that a purchaser is likely to take in comparing products or services, the greater the likelihood of confusion. Wynn Oil Co. v. American Way Service Co., 943 F.2d 595,

---

[4] See Gorelick Dep. at 31 and 42.

20

602 (6th Cir. 1991). Where a product is inexpensive, purchasers are less likely to exercise a great degree of care in determining the origin of a product. Hindu Incense v. Meadows, 692 F.2d 1048, 1051 (6th Cir. 1982). For example, courts have found that purchasers exercise a low degree of care when purchasing candles, id., and bread loaves, American Bakeries Co. v. Pan-O-Gold Baking Co., 1 U.S.P.Q.2d 1331, 1333 (D. Minn. 1986), because both are inexpensive and require relatively little sophistication to select.

The Sixth Circuit has noted that "where services are expensive or unusual, the buyer can be expected to exercise greater care in his or her purchases." Homeowners Group, 931 F.2d 1100, 1111. The services at issue here require a relatively high degree of consumer care. This case does not involve what type of milk or bread to purchase, or where to eat out for dinner. It involves medical skin treatments, such as facial peels, treatments for acne, plastic surgery and the like. Consumers exercise a high degree of care with respect to who will perform these services upon them.

Even where the use of a particular service or purchase of a particular product requires great care and sophistication, there may still be a likelihood of confusion where the marks are substantially similar. The Sixth Circuit has recently expressed that it is the effect of the degree of purchaser care which should control:

> The effect of purchaser care, although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue. If the District Court ultimately determines that the marks are not very similar, then even a high degree of purchaser care will decrease only slightly the already low likelihood of confusion. Similarly, if the District Court finds that the marks are quite similar, then purchaser care will decrease the likelihood of confusion only minimally because the care and skill which a purchaser will have used when deciding which instrument to buy will not have necessarily extended to his decision regarding which retailer to buy from. That is, confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party.

21

Daddy's Junky Music, 109 F.3d 275, 286 (citing Champions Golf Club, 78 F.3d at 1120-21).

Thus this factor is tied to the similarity of the mark. As discussed above, however, the marks are not substantially similar. Thus the fact that consumers exercise a high degree of care with respect to their choice of dermatological services favors the Defendants.

### (b) New England

As to New England, this factor is irrelevant.

### (7) Defendants' Intent in Selecting the Mark

Another factor relevant to the likelihood of confusion is whether there is any evidence that Defendants selected the mark knowing that it had already been used. This factor is relevant "because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." Daddy's Junky Music, 109 F.3d at 286. However, while evidence of actual intent suggests there is a likelihood of confusion, the Sixth Circuit has clearly instructed that the converse is not true: "Intent . . . is an issue whose resolution may benefit only the cause of a senior user, not of an alleged infringer." Id. at 287. Thus it appears that in the absence of intent, this factor must be deemed neutral.

### a. New Faces and Skin Care

There is no evidence of actual intent in this case. The owner of New Faces and Skin Care did not become aware of the existence of Plaintiff's logo until March of 1998, nearly two years after having created the one in use for New Faces and Skin Care. Defs' Amended Supplemental Answers to Pl's Interrogatories at ¶ 15, attached as Exb. 5 to Def. New England's Motion for Summary Judgment; see also Gorelick Dep. at 50, and generally from 48-57. Gorelick created the logo at Kinko's in early 1996, shortly after Skin Care was formed. Gorelick

Dep. at 51. With the assistance of an employee of New England, who was marketing its logos through Kinko's, Gorelick chose the logo from the medical section of the logo book. Gorelick Dep. at 54. There is absolutely no evidence that the logo was created with the intent of causing confusion. Homeowners Group, 931 F.2d 1100, 1111.

Circumstantial evidence can be used to demonstrate intent. Wynn Oil Co., 943 F.2d at 603. The "use of a mark with knowledge of another's prior use of the mark supports an inference of intentional infringement." Id. There is no evidence here that Gorelick used or created its mark with knowledge of Plaintiff's prior use.

Plaintiff contends that a fair inference can be made that Gorelick saw Plaintiff's logo before creating the one for New Faces and Skin Care because he testified in his deposition that that when he travels he looks at yellow pages from other parts of the country, in order to ascertain how physicians and medical offices advertise. Gorelick Dep. at 62. He also testified that locally he looks in the Ameritech Yellow Pages that comes to his office, which covers Oakland County. Gorelick Dep. at 63. This does not create an inference that Gorelick acted with intent to cause confusion. He was not even aware of the existence of Cosmetic Dermatology until March of 1998. Gorelick Dep. at 48-49. It is difficult to understand how Gorelick could have acted with intent in 1996 if he had no knowledge of the business until 1998. Without knowledge of the existence of Cosmetic Dermatology it is difficult to understand how Gorelick would have known which logo Plaintiff used. It is also difficult to understand why Gorelick would think that by creating a similar logo he would somehow confuse consumers with respect to which business offers the services. Further, there is no evidence that Plaintiff's mark was used for an extended period of time before Gorelick created and used its logo, nor is there evidence that Plaintiff's logo was extensively advertised. Daddy's Junky Music, 109 F.3d 275,

286 ("[T]he extensive advertising and long-term use of a protected mark can create a presumption that the alleged infringer knew of the protected mark." Id.) This factor does not tip the scale in Plaintiff's favor. However, it does not benefit New Faces or Skin Care either. This factor must be deemed neutral. Id. at 287.

### b. New England

There is absolutely no intent on the part of New England with respect to the logo created for New Faces and Skin Care. New England had been selling its pattern logo for at least five years prior to Plaintiff's first use of the logo in August of 1995. New England had absolutely no knowledge of Plaintiff's existence, and was unaware of the use of Plaintiff's mark prior to assisting in the creation of New Faces and Skin Care's logo in March of 1996. See Decl. of Edward M. Bolesky ¶¶ 7-8, attached as Exb. 4 to New England's Motion for Summary Judgment. This factor is deemed neutral as to New England. Daddy's Junky Music, 109 F.3d 275 at 287.

### (8) Likelihood of Expansion of the Product Lines

The final factor which the Court must consider is the likelihood that either party will expand its business. "[A] 'strong possibility' that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." Daddy's Junky Music, 109 F.3d at 287 (quoting Homeowners Group, 931 F.2d at 1112). As with the factor relating to a defendant's intent, an affirmative finding on this factor "will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is not a strong indication to the contrary." Daddy's Junky Music, 109 F.3d at 287.

### (a) New Faces and Skin Care

Cosmetic Dermatology competes directly with New Faces/Skin Care for the same services. Further there is evidence in the record that New Faces/Skin Care intends to offer services through more offices in Wayne, Oakland, Macomb and Washtenaw counties. Gorelick Dep. at 33-35. This factor favors Plaintiff.

### (b) New England

With respect to New England, this factor is irrelevant. New England shares no common services with the Plaintiff or the other Defendants. Whether it intends to expand its business is irrelevant.

### (9) No Likelihood of Confusion

Considering all of the above factors, there is no likelihood of confusion here. The most compelling factors clearly favor the Defendants. The marks are not substantially similar, nor is the Plaintiff's mark strong. Further, there is little evidence of actual confusion in the marketplace. Although the marketing channels are the same, the parties offer the same services, and there is a likelihood of expansion of the product lines, these factors, when considered against the three that clearly rest in Defendants' favor, do not constitute a likelihood of confusion when balanced. The Defendants' motions for summary judgment on the Lanham Act claim are GRANTED. Plaintiff's motion is DENIED.

### C. Common Law Unfair Competition (Count II)

The same likelihood of confusion test which applies in the context of the Lanham Act applies with respect to Michigan's common law of unfair competition. Wynn Oil, 943 F.2d at 604-005; Carson, 698 F.2d at 833; Two Men and a Truck Int'l v. Two Men and a Truck

25

Kalamazoo, 949 F.Supp. 500, 503 (W.D. Mich. 1996). Accordingly, summary judgment for Defendants is warranted on Count II as well.

## D. Michigan's Consumer Protection Act (Count III)

Plaintiff's final allegation is that the Defendants have violated the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et. seq. The Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce . . ." Mich. Comp. Laws Ann. § 445.903(1). The statute requires that the unfair practice be committed "in the conduct of trade or commerce." Id. The statute defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . . ." Mich. Comp. Laws Ann. § 445.902(d).

In this case, the Plaintiff and the Defendants New Faces and Skin Care never engaged in any trade or commerce with each other within the meaning of the statute. No purchase or transaction was involved. Although a purchase was involved as between Plaintiff and New England, the logo was not purchased "primarily for personal, family, or household purposes." Rather, Plaintiff seeks to recover against the Defendants as competitors. The court in John Labatt Ltd. v. Molson Breweries, 853 F.Supp. 965 (E.D. Mich. 1994) permitted such an action to go forward. In Labatt, the court held that business competitors had standing as consumers to bring Michigan Consumer Protection Act claims. The court failed, however, to analyze whether the plaintiff Labatt satisfied the Act's "trade or commerce" requirement. This failure was noted by another court in Robertson v. State Farm Fire and Cas. Co., 890 F.Supp. 671, 679 (E.D. Mich. 1995). In Robertson, the court stated:

> Assuming a business competitor could have 'standing' as the court in Labatt held, the competitor would have to show - as would all other plaintiffs - that the goods or property bought (or services procured) were 'primarily for personal, family or household purposes.'"

26

Id.

Because Plaintiffs did not buy goods or services from the Defendants within the meaning of the Act, they did not engage in "trade or commerce." Plaintiff's Michigan Consumer Protection Act claim must fail.

**IV. Conclusion**

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

IT IS ORDERED THAT Defendants New Faces Skin Care Centers, Ltd. and Skin Care Specialists, P.C.'s motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED THAT Defendant New England Business Services' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED THAT Plaintiff Cosmetic Dermatology & Vein Centers of Downriver, P.C.'s motion for summary judgment is DENIED.

SO ORDERED.

Nancy G. Edmunds
U. S. District Judge

Dated: **FEB 28 2000**



27